## HADFIELD-PENFIELD STEEL CO. v. EASTERN PRODUCTION CO.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1922.)

No. 3657.

1. **Appeal and error ⬀849(2)—Without written waiver of jury, only sufficiency of findings to support judgment can be reviewed.**

In the absence of any written stipulation, under Rev. St. § 649 (Comp. St. § 1587), for trial of an action at law without a jury, so as to permit the full review contemplated by section 700 (Comp. St. § 1668), a judgment rendered on report of a referee can be reviewed only to determine whether the finding of fact made by the referee supports the judgment entered by the court, and a bill of exceptions certified by the District Judge and stating that it contained all the evidence, is ineffective.

2. **Contracts ⬀354—Referee's finding held to authorize allowance of charge for additional labor.**

Where the contract required defendant to pay plaintiff for labor at the rate of $1 an hour on the work performed for defendant, a finding by the referee that a charge of 17½ per cent. in addition to the amount of labor charged by plaintiff's workmen for their work on defendant's job was not an unreasonable amount to cover the labor of those who did not make a report of time on specific items of production, and that such addition was according to custom in the locality on similar contracts, sustains a judgment for the item for additional labor.

3. **Contracts ⬀354—Referee's finding held to sustain allowance in excess of labor rate specified in contract.**

Where the contract required defendant to pay plaintiff a stated hourly rate for labor on defendant's work, and to pay the cost of materials, plus 10 per cent., a charge by the plaintiff for work done outside its plant on the basis of what it was required to pay for such work, plus 10 per cent., which exceeded the labor rate specified·by the contract, was not so clearly contrary to the terms of the contract as to show that the referee's allowance therefor, on the ground that the parties had construed the contract by their course of conduct, was insufficient to sustain a judgment allowing that item.

4. **Contracts ⬀244—Facts held to show acquiescence in manner of charging adopted by plaintiff for work done outside of plaintiff's plant.**

Even if employees of defendant, charged with the duty of inspecting the work done by plaintiff for defendant and seeing that no improper charge therefor was made, had no authority to bind defendant to allow charges for work done outside of plaintiff's plant at the rate fixed for materials furnished, instead of at the rate fixed by the contract for labor, it must be presumed such employees reported that fact to defendant, so that defendant's continued payments on the account including such items was an acquiescence in that charge, which waived its right thereafter to contend it was liable only on the basis of the contract rate for labor.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by the Eastern Production Company against the Hadfield-Penfield Steel Company. Judgment for plaintiff, and defendant brings error. Affirmed.

⬀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Tolles, Hogsett, Ginn & Morley, of Cleveland, Ohio, for plaintiff in error.

Squire, Sanders & Dempsey, of Cleveland, Ohio, W. J. Griffin, of Detroit, Mich., and William C. Boyle and Thomas M. Kirby, both of Cleveland, Ohio, for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The Steel Company, as purchaser, entered into a contract with the Production Company, by which the latter was to build certain machines and furnish them to the Steel Company. The production was to be paid for on a time and material basis—the time at $1 an hour and the material at cost plus 10 per cent. The machines were furnished, and this action was brought in the District Court against the Steel Company, to recover the unpaid balance of the agreed compensation. The controversy was centered upon three matters:

(1) The original time slips turned in by the workmen had not been preserved, and the plaintiff sought to prove the number of hours by producing certain relatively secondary entries kept by a system of cards. The defendant denied that these were competent evidence.

(2) In making up its invoices for hours of labor, plaintiff took the total hours upon a certain piece of work shown by these cards, and then added 17½ per cent. to cover labor not included in the card record. Defendant disputed this excess.

(3) Plaintiff had some of the work done for it by other factories and at a cost of more than $1 per hour. In making up its invoices, it took the amount which it had paid for a particular job and added 10 per cent. The defendant disputes liability for anything over $1 per hour.

There was no written stipulation waiving a jury trial, but by consent a referee was appointed "to examine the records and the evidence now on file or thereafter taken herein, and to make special findings of fact on the issues joined between the parties and report the same to the court." Testimony was taken before the referee. He made findings of fact and conclusions of law; the defendant filed exceptions, which probably should be classified as exceptions only to the conclusions of law; the case was heard before the District Judge on the defendant's exceptions; and the exceptions were overruled, and the referee's report confirmed. The resulting judgment for the plaintiff is brought here for review. The errors claimed are that the card records of time spent were inadmissible, and that both the addition of the 17½ per cent. and of all charges over $1 an hour for time were unauthorized by the contract.

[1] In the absence of any written stipulation under R. S. § 649, (Comp. St. § 1587), so as to permit the full review contemplated by section 700 (Comp. St. § 1668), it is clear that we have no jurisdiction to review any question, save whether the finding of facts made by the referee supports the judgment entered by the court. Cleveland v. Walsh Co. (C. C. A. 6) 279 Fed. 57. The record contains what is called a bill of exceptions, certified by the District Judge, purport-

ing to show all the evidence offered and received and proceedings had before the referee; but this is unauthorized and cannot be considered, as this court early held in Shipman v. Ohio, 70 Fed. 652, 656, 17 C. C. A. 313. This disposes of the first error claimed.

When we come to inquire whether the findings support the judgment in the particulars in which it is challenged, we observe that the findings of fact are incomplete, are somewhat in the nature of comments on the evidence, and evidently are intended to be only supplementary to things not in dispute. In view of the attitude of both parties and the absence of any criticism upon the findings in this respect, we are inclined to treat them in the same way, and to interpret and supplement them by the facts which counsel in their briefs expressly concede or take for granted, though it might forcefully be said that, in view of the general findings of fact which must be implied from the judgment, error could be found only if there were specific fact findings which were affirmatively and necessarily inconsistent with the judgment.

[2] As to the 17½ per cent. addition, the finding is:

"That the addition of the 17½ per cent. to the labor reported and recorded on the 'S. O.' cards was not an unreasonable amount to add to cover the class of labor it was intended to cover, and that such addition was according to custom in the locality of Detroit, at least on such contracts."

It evidently was claimed by plaintiff to be the fact, and the claim is established by this finding, that the cards contain only the record of the work of the machinists and others who worked somewhat continuously upon this particular job, while it was other workers, such as men getting the material, cleaning castings, painting, crating, etc., and who did not make a report of time on specific items of production, who were, through this 17½ per cent. addition, carried into the total of time charged. There is nothing in this method or practice necessarily so inconsistent with the terms of the contract as to require the total rejection of this item; and if, in fact, it did include some matters that were properly "overhead" and were intended to be covered by the margin of profit allowed in the $1 per hour, the findings give no way of eliminating any such improper addition.

[3] Taking the findings upon the subject of a 10 per cent. addition with what seems to be conceded, we think we may rightly infer that what plaintiff did was, for example, to sublet the work of grinding gears, for which it was charged and paid $1.35 per hour, and then to charge this to defendant at $1.485 per hour. Just how this was invoiced by the plaintiff to the defendant is not clear. It is said that the whole amount was invoiced as if hours at $1 per hour. The finding seems to imply that it was invoiced as materials at cost plus 10 per cent; but what form the invoice took does not control. If plaintiff bought from another manufacturer a completed gear, it would plainly have the right to charge cost plus 10 per cent.; if it furnished the other manufacturer a rough casting, which had cost a certain amount, and this casting came back ground and finished, the entire product was in a certain sense material coming to the plaintiff to assemble, and the original casting cost, plus the outside labor cost of

finishing or grinding, would be cost of material. We have no occasion to say that this would be the construction which we would put upon the contract; but it was capable of that interpretation by the parties, without involving such a clear distortion of the contract as would require a court to refuse to accept their construction. The finding makes it clear enough that this method of charging for this work was practiced, in effect, continuously from the beginning to the end, and that it was well understood by the defendant's two employés, who were successively stationed at plaintiff's plant as inspectors of production and for the very purpose of checking plaintiff's charges.

[4] It is said, on the one hand, that these employés expressly agreed to and approved this method of charge, and, on the other hand, that they had no authority to do so; but, if they lacked authority to approve, it certainly was their duty to report these details to the defendant, and it must be presumed that they made such disclosures in their daily reports. The defendant made no objection or protest, but continued to make payments upon account, and it was open to the referee to find that the plaintiff put this construction upon the contract, that defendant knowingly acquiesced therein, and that the plaintiff continued to perform in reliance upon such acquiescence. If so, the defendant could not later urge the contention which it had waived. The reason why defendant acquiesced in this practice is not important, but a reference to the printed bill of exceptions and an extract from the testimony of one of these inspectors very likely furnish the explanation. He testifies that he observed mistakes or fraud in the keeping of the time records, and reported it to his principals, the defendant's officers. He says:

"They did not tell me to stop the work, but [plaintiff's manager] threatened to stop it if things did not go on as they were, and at that time [1918] this country was in bad shape and they needed the work, no matter who would make it and under what conditions. I was interested in having the production increased, to hurry it right along."

The judgment is affirmed.